IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

FRANK THORNBURG,                )
                                )
            Plaintiff,          )
                                )
v.                              )   Case No. CIV-09-269-KEW
                                )
FRAC TECH SERVICES, LTD.,       )
                                )
            Defendant.          )

**OPINION AND ORDER**

This matter comes before the Court on Defendant's Motion for Summary Judgment filed February 25, 2010 (Docket Entry #30). Having had a timely response and reply filed to it, the Motion is at issue. Upon review and consideration of these documents, this Court renders this ruling.

On March 21, 2007, Plaintiff was hired to work for Defendant as a truck driver and equipment operator. Plaintiff worked as an operator for three or four months until he was offered the position of driver trainer. Defendant's regional manager, Joe Bueno ("Bueno"), believed transferring Plaintiff to this new position would be physically easier on Plaintiff because of the steel rods in his neck. Bueno was aware that Plaintiff had undergone neck surgery in November of 2006, prior to hiring Plaintiff.

Plaintiff testified he had no problems with Bueno or Clint Alford ("Alford"), safety supervisor for Defendant while he worked for Defendant and never made any complaints that he was being treated unfairly while he worked for Defendant.

On May 22, 2007, Plaintiff received Defendant's Employee Handbook. The Handbook contained includes information regarding the employee's benefits and obligations under the Family Medical Leave Act, filing worker's compensation claims, and requests for leave of absences. With regard to this latter issue, the Handbook provides at Section 3.4 as follows:

> A. Full-time employees who have completed six (6) months of service are eligible for leaves of absence without pay. These include, but are not limited to: 1) Educational leave; 2) Personal leave; 3) Military leave; 4) Sick leave.
>
> B. You must submit a written request to your supervisor, using the "<u>Frac Tech Request for LOA Form</u>" that is contained in this handbook. This request must be approved in writing by your Department Manager or District Manager <u>before</u> LOA is taken by you. **<u>Your District Manager or Department Manager will write a letter to you granting or denying the leave of absence</u>**. If approved, the letter will outline the conditions of the leave of absence. You must make personal contact with the designated Department Manager or District Manager prior to officially leaving, and you must notify the designated Department Manager or District Manager prior to returning.

(Emphasis in original.)

In July or August of 2007, Plaintiff began experiencing bronchitis symptoms and hives. As a part of his employment with Defendant, Plaintiff assisted in cleaning up a hydrochloric acid spill in a stock pond located in Atoka, Oklahoma. The pond had to be emptied and refilled with water. Plaintiff was on location for several days watching trucks, making sure the trucks were hauling loads, and counting loads.

In late 2007, Plaintiff experienced nausea, weakness, fatigue, and disorientation. Plaintiff was diagnosed with a transient ischemic attack. Prior to early October of 2007, Plaintiff first discussed his condition with Alford and his belief that it was work-related.

On December 19, 2007, Plaintiff was attended by Dr. David Vogel, a pulmonologist. Dr. Vogel determined Plaintiff suffered from exertional dyspnea secondary of multifactorial etiology. Contributing factors included possible chemical tracheitis, inflammatory rhinosinusitis with sinopulmonary syndrome and hydrochloric acid hypersensitivity superimposed on COPD.

Plaintiff communicated this diagnosis to Alford and told him he needed to turn the medical bills in on a worker's compensation claim. Previously, he had been submitting the bills under the companies' insurance. On January 23, 2008, Defendant submitted a Form 2 to the Worker's Compensation Court for Plaintiff's exposure to hydrochloric acid while working for Defendant.

On March 6, 2008, Plaintiff's treating physician, Dr. Thomas C. Bonin, authored a note which stated Plaintiff was "being worked up for possible transient ischemic attacks" and, therefore, could not "work for another two weeks as he will be having more tests run." On April 7, 2008, Dr. Bonin completed a form which stated Plaintiff "should not work or attend school from 04/07/2008 to 04/30/2008." The "comments" section of the form, however,

indicates "Frankie is not released to go back to work until he has further evaluation of his cognitive (ie, thinking) functions."

On May 7, 2008, Defendant terminated Plaintiff's employment. Plaintiff was contacted by telephone by Bueno and informed that his employment with Defendant was terminated because Plaintiff was not able to get a medical release. Plaintiff also received a letter from Bueno on behalf of Defendant which stated:

Dear Mr. Thornburg,

We received written notice from your physician that due to a medical condition you were not able to report to work beginning March 4, 2008. According to our records you have not yet received a full medical release without restrictions to return to work.

Due to the length of your service and your inability to return to work, Frac Tech Services, Ltd. is not able to hold your position for you; therefore, we have no other recourse but to terminate your employment effective your first day of absence.

When you receive a full medical release without restrictions to return to work, you are welcome to re-apply for any job openings that may be available for consideration of employment. We wish you a speedy recovery.

On June 1, 2008, Plaintiff completed an application for long term disability with CIGNA. In the application, Plaintiff reported he could not work "[d]ue to my lung condition. I have shortness of breath. I cannot move about much without rest. Temp changes affects my breathing. I have confusion, head aches, and I lose my sense of direction as well as I cannot concentrate. I do not feel comfortable to drive by myself." In response to the question of

4

whether Plaintiff had discussed returning to work with his physician, Plaintiff responded "yes" but his physician would not allow him to return to work "until my condition improves." In response to the question "[w]hen do you expect to return to work," Plaintiff wrote "I do not know."

On July 28, 2008, the Workers' Compensation Court in Oklahoma determined Plaintiff's lung problems were caused by work-related chemical exposure and awarded benefits.

Plaintiff was not released to work by his physician until late July of 2009. He did not return to work until October of 2009. After his release, Plaintiff did not contact Defendant to determine if they had any job openings.

Plaintiff initiated this action for violation of the Americans with Disabilities Act ("ADA"), the Family Medical Leave Act ("FMLA"), and for violation of Okla. Stat. tit. 85 § 5, alleging he was terminated in retaliation for filing a worker's compensation claim. Defendant filed the subject Motion, contending Plaintiff cannot prevail on any of the asserted claims.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that, "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the initial

burden of showing that there is an absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

In this case, in relation to the material facts set forth herein above, there exists no genuine issue, either because the facts were admitted in Plaintiff's response to the pending motion for summary judgment, or were not contested directly by competent evidence. Accordingly, this Court finds it appropriate to examine whether Defendant is entitled to prevail as a matter of law.

Defendant asserts summary judgment is appropriate in this case because Plaintiff cannot establish a *prima facie* case for discrimination under the ADA. Specifically, Defendant contends

Plaintiff could not perform the essential functions of the driver trainer job or any other job at its facility because Plaintiff was not medically released to work and could not provide a date by which he could return to his employment.

Generally, the ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privilege of employment." 42 U.S.C. § 12112(a). In order to prevail on his claim for violation of the ADA, Plaintiff bears the burden of proof to establish: (1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, that is, with or without reasonable accommodation (which he must describe), he is able to perform the essential functions of the job; and (3) that Defendant discriminated against him because of his disability. <u>Davidson v. America Online, Inc.</u>, 337 F.3d 1179, 1188 (10th Cir. 2003). The first required element has been satisfied. Defendant has not challenged the fact that Plaintiff's condition has rendered him a disabled person.

The primary element in contention is whether Plaintiff was qualified to work with or without reasonable accommodation. Defendant first contends Plaintiff could not perform the essential functions of the driver trainer job. The record is replete with

evidence Plaintiff could not perform his job. He could not concentrate and became concerned about his own ability to drive. His breathing problems also contributed to his ability to work in his prior job. Plaintiff, however, contends he could perform other functions in Defendant's offices. Moreover, Plaintiff asserts Defendant should have offered him an unpaid leave of absence in lieu of terminating his employment as a reasonable accommodation.

This Court agrees with Plaintiff's position that a "qualified individual with a disability" does not require that one be able to perform only the essential functions of his then-existing job. The ADA "includes an employee who has the ability to do other jobs within the company that such disabled employee 'desires.'" Smith v. Midland Brake, Inc., 180 F.3d 1154, 1161 (10th Cir. 1999). Thus, while Plaintiff could not perform the essential functions of the converting job, if he can perform the essential functions of some other job with Defendant, the inquiry proceeds to whether it is a reasonable accommodation to reassign him to these other jobs.

As stated, it is Plaintiff's position that Defendant should have allowed him to do other jobs such as dispatching as a reasonable accommodation. Plaintiff's position in this regard is flawed on several fronts. It should first be noted that evidence has not been presented to show Plaintiff ever requested an accommodation from Defendant. Nevertheless, the ADA specifically recognizes that a "reasonable accommodation" includes "reassignment

to a vacant position." 42 U.S.C. § 12111(9)(B). To accomplish the mandates of this statute, however, an employer is not required to create a new position, promote the disabled employee, or reassign the disabled employee to an occupied position. White v. York Internat'l Corp., 45 F.3d 357, 362 (10th Cir. 1995). Nothing in the record indicates other jobs were vacant or available for Plaintiff to perform with Defendant.

More importantly, despite Plaintiff's protestations to the contrary, the record indicates Plaintiff was never released by his treating physician for a return to work on any level. While some of the forms encompassed specific dates and time periods, neither Plaintiff nor Dr. Bonin, his physician, ever explicitly expressed a belief that Plaintiff could return to work, either because of his cognitive deficiencies or pulmonary difficulties. Upon repeated inquiry by Defendant, Plaintiff could not provide a date he could return to work. As a result, even if Plaintiff had requested an accommodation through placement in other jobs with Defendant, he was not medically released to perform other jobs with Defendant, had any been available.

Plaintiff also takes the position that Defendant should have accommodated his disability by offering him an unpaid leave of absence in accordance with its leave policy set forth in the Handbook. Under the ADA, an employer is not required to grant an employee indefinite leave until a position for which he is

qualified opens up or for an excessive amount of time. Boykin v. ATC/VanCom of Colorado, L.P., 247 F.3d 1061, 1064-65 (10th Cir. 2001). In this case, Plaintiff could not advise Defendant when and under what conditions he could return to any work - a circumstance which relieves Defendant from the obligation to accommodate Plaintiff. Id. citing Taylor v. Pepsi-Cola Co., 196 F.3d 1106, 1110 (10th Cir. 1999). Additionally, Plaintiff was aware of the leave policy contained in the Handbook and its requirement of Plaintiff to take affirmative action to request the leave. He did not avail himself of the established process. Defendant was under no obligation through the ADA to affirmatively offer the leave of absence under the facts of this case as a reasonable accommodation of Plaintiff's disability.

Plaintiff next contends Defendant violated the FMLA by not offering him protected medical leave. This issue as framed by the parties is a legal one, concerning whether Plaintiff was eligible for FMLA leave. As previously related, Plaintiff was hired on March 21, 2007. He ceased working due to his medical condition on March 4, 2008. The record does not indicate that Plaintiff ever requested FMLA leave. To be eligible for the leave allowed under the FMLA, an employee must have been employed for more than twelve months and worked at least 1250 hours in the preceding twelve months. 29 U.S.C. § 2611. The employee is then entitled to a total of 12 work weeks of leave during any 12-month period due to

the occurrence of certain familial events, including medical. 29 U.S.C. § 2612(a)(1). When the employee returns from such leave, he is entitled to be restored to the position of employment held by the employee when the leave commenced or to an equivalent position with equivalent employee benefits, pay, and other terms and conditions of employment. 29 U.S.C. § 2614(a)(1).

When Plaintiff was terminated, the determination as to when an employee becomes eligible for FMLA leave is made "as of the date leave commences." 29 C.F.R. § 825.110(d). Case law interpreted this phrase as used in the regulations as meaning eligibility is gauged as of the date the leave is to begin on "the front end." The determination was not made "anew once the employee passes his FMLA eligibility date." Adly v. Supervalu, Inc., 2007 WL 2226040, 4 (D.Minn.); see also, Walker v. Elmore Co. Bd. of Educ., 379 F.3d 1249, 1253 n.10 (11th Cir. 2004)(FMLA eligibility is determined "as of the date leave commences"); Davis v. StaffMark Investment, LLC, 2006 WL 1401622, 2 (N.D. Okla.)("request - made by an ineligible employee for leave that would begin when she would still have been ineligible - is not protected by the FMLA").

In 2009, § 825.110(d) was "clarified" by the United States Department of Labor to add the following language:

> An employee may be on "non-FMLA" leave at the time he or she meets the eligibility requirements, and in that event, any portion of the leave taken for an FMLA-qualifying reason after the employee meets the eligibility requirement would be "FMLA leave."

11

Despite being characterized as a "clarification" of an existing rule, the result altered the interpretation by some courts. Plaintiff cites the case of Porcillo v. Vistar Corp., 2010 WL 427534 (M.D. Fla.) in support of the retroactive application of this regulation. The practical effect of retroactivity in this case is to expect an employer to anticipate a regulatory interpretation contrary to applicable case authority. An employer should not be put at risk when its interpretation has been accepted. Changes in administrative rules "will not be construed to have retroactive effect unless their language requires this result." Green v. Nottingham, 90 F.3d 415, 418 (10th Cir. 1996). The modification in the language of § 825.110(d) became effective on January 16, 2009 by the express language of the regulation. Applying this change retroactively would subject Defendant to liability for past conduct - a result which would be unduly prejudicial to Defendant. This Court, therefore, concludes Plaintiff was not eligible for FMLA leave in accordance with Defendant's interpretation of the then-existing authority.

Plaintiff also asserts Defendant terminated him in retaliation for exercising his rights under the Oklahoma Workers' Compensation Act. For Plaintiff to prevail on his claim that he was discharged in retaliation for filing a worker's compensation claim, he must first establish a prima facie case by showing that he was employed by Defendant, sustained an on-the-job injury, received treatment

under circumstances which put Defendant on notice that treatment had been rendered for a work-related injury, and consequent termination of employment. Buckner v. General Motors Corp., 760 P.2d 803, 806 (Okla. 1988).[1] After a prima facie case is established, the burden shifts to Defendant to rebut the inference that its motives in terminating Plaintiff were retaliatory by articulating that the discharge was for a legitimate, non-retaliatory reason. Thereafter, should Defendant sustain this burden, Plaintiff must demonstrate that the legitimate, non-retaliatory reason proffered was mere pretext. Id. at 807. However, at all times the burden of persuasion lies with Plaintiff. Id.

In making a prima facie case for retaliatory discharge, Plaintiff must also show that the filing of a worker's compensation claim was a "significant factor in [her] termination from employment." Large v. Acme Engineering and Manuf. Corp., 790 P.2d 1086, 1088 (Okla. 1990) citing Elzey v. Forrest, 739 P.2d. 999 (Okla. 1987). A prima facie case of retaliatory discharge is "not made when a plaintiff merely shows that his termination was

---

[1] The action finds its statutory basis in Okla. Stat. tit. 85 §5(A)(1), which provides:

> No person, firm, partnership or corporation may discharge any employee because the employee has in good faith filed a claim, or has retained a lawyer to represent him in said claim, instituted or caused to be instituted, in good faith, any proceeding under the provisions of this title, or has testified or is about to testify in any such proceeding.

13

'somewhat contemporaneous' with the filing of a worker's compensation claim." Id. citing Elzey, 739 P.2d at 1003 and Thompson v. Medley Material Handling Co., 732 P.2d 461 (Okla. 1987). Plaintiff must present evidence that "does more than show the exercise of his statutory rights 'was only one of the many possible factors resulting in [her] discharge'" Blackwell v. Shelter Mutual Ins. Co., 109 F.3d 1550, 1554 (10th Cir. 1997) citing Wallace v. Halliburton Co., 850 P.2d 1056, 1059 (Okla. 1993).

In support of this claim, Plaintiff contends he filed a worker's compensation claim, informed his supervisor, gave a deposition in the worker's compensation case in April of 2008, and was terminated in May of 2008. Additionally, Plaintiff testified to two conversations with representatives of Defendant which he asserts indicates an improper motivation in his termination. The first was with Bueno when he informed Plaintiff of his termination. Plaintiff testified at his deposition as to the content of the conversation in the following exchange:

> Q: When Mr. Bueno called you in early May of 2007 or whatever the exact day was, I need you to tell me in as much detail as you can recall what he said to you in that phone call and what you said to him.
>
> A: He asked me how I was doing, you know, how I was feeling, if I had got any update on testing being done earlier, anything that way. I told him no. He said, well, he said – he said we've got a problem. He said we're going to have to – due to insurance cost he said I'm going to have to terminate your employment. He said we can't keep

you on the payroll, pay insurance, and you not working. And, anyway, I asked him, I said, well, what about when after I have these tests done if they say it's all right to go back to light duty like dispatching or something like that. And he said, well, there's not any dispatching available. He said all the positions are filled.

The second conversation is somewhat more mired in multi-leveled hearsay. Plaintiff contends he spoke with Johnny Smithy, a service supervisor with Defendant. Plaintiff testified to his conversation with Smithy as follows at his deposition:

> A: And it was a short time after I was fired I seen Johnny Smithy and visited with him.
>
> Q: What was his position with the company?
>
> A: Johnny Smithy was a treater and supervisor on locations.
>
> Q: Where did you run into Johnny?
>
> A: I visited him at his house.
>
> Q: Okay. So you went - -
>
> A: In McAlester.
>
> Q: You went to Johnny's house?
>
> A: Yes.
>
> Q: How soon was this after Frac Tech terminated you?
>
> A: Probably, I don't know, three weeks maybe.
>
> \* \* \*
>
> Q: What did Johnny tell you?
>
> A: I asked him if he knew that I had been fired. I said have you heard I don't work for Frac Tech anymore. And, anyway, he said - he laughed. And I said what are you laughing about. And he said, Dog, he said, I was -

15

A: He said - he said I was in John [Smith]'s office, the safety man's office, he said, when Joe [Bueno] come in and told [Operations Manager] Dusty [Wood] that they had to get together and figure out how to get rid of me on a technicality because of the workmen's comp claim.

(Bracketed information added by Court from Plaintiff's Response).

Plaintiff also claims another employee was terminated who had also filed a worker's compensation claim. Plaintiff asserts this demonstrates a pattern on Defendant's part of terminating employees with worker's compensation claims.

Plaintiff's testimony concerning the conversation with Bueno on the day of his termination creates a factual dispute since it is subject to multiple interpretations as to what Bueno intended when he attributed a part of the basis for Plaintiff's termination to insurance costs. In a light most favorable to Plaintiff, this terminology could indicate a desire to avoid the costs associated with Plaintiff's worker's compensation claim. As a result, summary judgment is precluded on this claim.

As for Plaintiff's conversation with Johnny Smithy, the testimony is fraught with prohibitive hearsay. The evidence demonstrates Smithy was not involved in the decision to terminate Plaintiff. His statements cannot be attributable to his employer unless he was "involved in the decisionmaking process affecting the employment action" at issue. <u>Johnson v. Weld County, Colo.</u>, 594

16

F.3d 1202, 1208-09 (10th Cir. 2010). Consequently, his multi-layered hearsay statements cannot be admitted into evidence, since the statements are not subject to an exception to the hearsay rule. Fed. R. Civ. P. 801; Argo v. Blue Cross and Blue Shield of Kansas, Inc., 452 F.3d 1193, 1199 (10th Cir. 2006)("[t]o determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury.")(citations omitted).

The fact another employee who filed a worker's compensation claim was terminated is countered by several other employees who filed claims but were not terminated. This, however, goes to the weight of the evidence – a matter inappropriate for consideration at the summary judgment stage.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment filed February 25, 2010 (Docket Entry #30) is hereby **GRANTED** on Plaintiff's claims based in the Americans with Disabilities Act and Family Medical Leave Act. These claims are hereby **DISMISSED**. Summary judgment, however, is **DENIED** on Plaintiff's claim for retaliation in the filing of a worker's compensation claim due to the presence of a dispute in the material facts of the claim.

IT IS SO ORDERED this 21st day of April, 2010.

                                                  KIMBERLY E. WEST
                                                  UNITED STATES MAGISTRATE JUDGE